V. Lamar **SKELTON**, Plaintiff-Appellant,

v.

**UNITED STATES POSTAL SERVICE,**
**Defendant-Appellee.**

No. 81–1477
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 9, 1982.

---

V. Lamar Skelton, pro se.

James A. Rolfe, U.S. Atty., Richard B. Vance, Asst. U.S. Atty., Fort Worth, Tex., Leonard Schaitman, Dept. of Justice, Civ. Division, Law Dept., Charles D. Hawley, Leslie Ann Corston, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY and RANDALL, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiff V. Lamar Skelton brought this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel disclosure of material deleted from documents furnished him in response to a FOIA request. The district court granted summary judgment for the defendant agency, the United States Postal Service. Still seeking disclosure of material deleted from a single document, plaintiff appeals. We affirm.

I. *Background*

Skelton is a former employee of the Fort Worth post office. He retired from the Service on disability pay after suffering a work-related injury. Since his retirement, he has spent much time representing other postal employees or former employees in pursuing various claims against the agency.

On April 5, 1978, Skelton went to the Fort Worth post office with another former employee, Jerald Miller. The two wished to see employment records pertaining to a compensation claim that Miller was pursuing. Two employees in the personnel office, Slaten and Saul, gave Skelton and Miller all the records they requested except for medical records. Slaten and Saul told Skelton and Miller to go to the separate medical unit to obtain those records.

According to Skelton's account, he and Miller went to the medical unit and found it closed. They returned to the personnel office and asked a nurse, Goodson, to get the records for them. When she declined to do so, Skelton reminded her that he had made an appointment to view the records and said that he should not be kept waiting indefinitely. Lanier Luttrell, the director of personnel, intervened and told Skelton not to interfere with his workers. When Skelton attempted to persuade Luttrell to honor his scheduled appointment and initiate efforts to produce the records, Luttrell ordered Skelton and Miller to leave the personnel office.

According to Luttrell's account, Skelton had ordered Goodson to stop what she was doing and immediately procure the records. When she failed to do so, Skelton "began to talk down to her in a very loud voice and acted in a tyranical [sic] manner." His actions disrupted the business of the office and startled non-employees who were on the premises. Luttrell intervened and told Skelton that if he filled out a proper, written request for the records they would be retrieved. Skelton persisted in arguing and Luttrell told him to leave the office. Skelton remained and continued to argue until Luttrell indicated that he was about to phone for assistance to have Skelton removed by force.

Two days later, Skelton wrote a letter to the agency's Consumer Advocate complaining about the incident and requesting that the agency take internal disciplinary action against Luttrell, Goodson, Slaten, and Saul. He charged each of the four with various violations of the code of conduct for postal employees.

Because disciplinary matters are not handled by the Consumer Advocate's office, that office referred Skelton's letter to the agency's department of employee and labor relations. On May 25, 1978, Robert B. Gould, the Regional Director of Employee and Labor Relations for the Southern Region of the Postal Service, wrote to Skelton and informed him that "[t]he matter has been thoroughly reviewed and *based on the report we received* no further action is deemed warranted in the matter" (emphasis added).

Skelton then filed the FOIA request that is the subject of this lawsuit. He requested all records relating to his letter of complaint and the agency's decision not to take disciplinary action. Within two weeks, the agency produced the requested documents, but it deleted a section from a memorandum by Luttrell. While the parts of the Luttrell memorandum giving Luttrell's version of the incident were disclosed, the deleted section contained material which the agency accurately described in an interrogatory as

the opinions of Lanier Luttrell concerning: Plaintiff's activities representing present and former postal employees in various types of disputes with the Postal Service; of his motivations for assuming such representation; of Plaintiff's relations with the personnel at the Fort Worth Post Office; and of the administrative burden imposed on the Post Office by its obligation to respond to Plaintiff's Freedom of Information Act (FOIA) and Privacy Act (P.A.) requests.

In its letter transmitting the documents, the agency claimed that the deleted material was exempt from disclosure under 5 U.S.C. § 552(b)(5).

After an unsuccessful administrative appeal, Skelton brought this action.

## II. *Exemption 5*

The district court upheld the agency's determination that the deleted material was exempt from disclosure under 5 U.S.C. § 552(b)(5) ("Exemption 5"). That provi-

sion exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The district court agreed with the agency's position that the deleted material would not be available in civil litigation because it is protected by the executive, or "deliberative process," privilege.[1]

In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–50, 95 S.Ct. 1504, 1515–16, 44 L.Ed.2d 29 (1975), the Supreme Court recognized that preservation of the deliberative process privilege was the central purpose of Exemption 5. The privilege protects predecisional materials "reflecting deliberative or policy-making processes," but not materials that are "purely factual." *EPA v. Mink*, 410 U.S. 73, 87–89, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973). The purpose of the privilege is to protect the decision-making process from the inhibiting effect that disclosure of predecisional advisory opinions and recommendations might have on "the 'frank discussion of legal or policy matters' in writing." *Sears*, 421 U.S. at 150, 95 S.Ct. at 1516 (quoting S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965)).

The deleted material, which this court and the district court have reviewed *in camera*, comes within both the scope and purpose of the privilege.[2] Luttrell's opinions concerning plaintiff's activities, motivations, and strained relationships with the postal employees were clearly a part of the deliberative process by which the agency decided not to take internal disciplinary action against its employees. Moreover, the possibility of disclosure might well have inhibited Luttrell from advising his superiors in Washington of his view of the circumstances surrounding Skelton's complaint.

Skelton argues that because Luttrell's opinion was based on facts, it cannot be an opinion concerning "legal or policy matters" within the meaning of *Sears*, 421 U.S. at 150, 95 S.Ct. at 1516. In distinguishing between "purely factual" and "deliberative" materials, *see EPA v. Mink*, 410 U.S. at 89, 93 S.Ct. at 837, this court and others have recognized that analysis and evaluation of facts are as much a part of the deliberative process as analysis and evaluation of law. *See Cooper v. Department of the Navy*, 558 F.2d 274, 278 (5th Cir. 1977), *modified on other grounds on rehearing*, 594 F.2d 484 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979); *Wu v. National Endowment for Humanities*, 460 F.2d 1030, 1033 (5th Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973); *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 83, 85 (2d Cir. 1979); *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 575 F.2d 932, 934–35 (D.C.Cir.1978); *see also Hoover v. United States Dep't of the Interior*, 611 F.2d 1132, 1143 (5th Cir. 1980) (alternative holding).[3] The rigid distinction between "factual opinions" and "policy opinions" advocated by plaintiff does not and cannot exist—a policy must be based upon an evaluation of, or assumptions about, the "facts." *Cf. Cooper*, 558 F.2d at 278 ("to be of any use opinions must have something to be 'about' ").

We agree with Judge Thornberry's observation in *Wu* that there is no "ironclad"

---

1.  The trend among the lower courts has been to use the term "deliberative process privilege," possibly to avoid confusion with the constitutional doctrine of executive privilege discussed in *United States v. Nixon*, 418 U.S. 683, 703–16, 94 S.Ct. 3090, 3105–11, 41 L.Ed.2d 1039 (1974). For this reason, we will use the term "deliberative process privilege" in this opinion.

2.  The test for determining whether the material is protected by the privilege is not whether the private party would be able to override the privilege in civil litigation by a showing of particularized need, but whether the material would " 'routinely be disclosed' in private litigation." *Sears*, 421 U.S. at 149 n.16, 95 S.Ct. at 1516 n.16 (quoting H.R.Rep.No.1497, 89th Cong., 2d Sess. 10, *reprinted in* [1966] U.S.Code Cong. & Ad.News 2418, 2428); *see Hoover v. United States Dep't of the Interior*, 611 F.2d 1132, 1138–39 (5th Cir. 1980).

3.  *Compare Pacific Molasses Co. v. NLRB*, 577 F.2d 1172, 1183 (5th Cir. 1978) (holding "a mechanically compiled statistical report which contains no subjective conclusions" to be "purely factual").

test by which to determine whether material is "deliberative" or "predominantly, if not purely, factual." "A careful case-by-case analysis of the material sought is thus necessary." *Wu*, 460 F.2d at 1033; *accord*, 1 K. Davis, Administrative Law Treatise § 5:37, at 419 (2d ed. 1978). As in *Wu*, the "primary purpose" of Luttrell's deleted remarks was "the expression of an opinion to assist the agency in reaching a decision." 460 F.2d at 1033. While the deleted material contained some assertions of fact, the deleted material was an " 'evaluation[ ] [of the facts] based on ... the writer's own values.' " *Mead Data Central*, 575 F.2d at 935. Disclosure of the deleted material would serve only "to reveal the 'evaluative' process by which [a] member[ ] of the decision-making chain arrived at [his] conclusions—and what those predecisional conclusions [we]re." *Id.* Such disclosure is precisely what Exemption 5 was intended to prevent. *See Sears*, 421 U.S. at 150, 95 S.Ct. at 1516.

Skelton also argues that Luttrell's memorandum was simply the statement of a witness to the incident in the post office. While part of Luttrell's memorandum is Luttrell's factual version of the incident, that part has been fully disclosed to Skelton. In the deleted part of the memorandum, Luttrell was speaking not as a witness but as an administrator with an opinion concerning the proper disposition of Skelton's complaint. His opinion, therefore, was within the scope of Exemption 5.

### III. *The Exception to Exemption 5*

In *Sears*, the Supreme Court held that "if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5." 421 U.S. at 161, 95 S.Ct. at 1521–22.[4] Skelton argues that the agency's letter informing him that it would not take internal disciplinary action was a "final opinion," and that because the letter expressly said that this decision was "based on the report we received," Luttrell's memorandum was "incorporated by reference" into the agency's opinion. The district court agreed with Skelton that the letter was a "final opinion," but concluded that it did not expressly incorporate the Luttrell memorandum.[5] Since we hold that the letter was not a "final opinion" within the meaning of *Sears*, we express no view on the question whether the letter made reference to the Luttrell memorandum.

The term "final opinion" is not defined in the section of the *Sears* opinion establishing the incorporation by reference exception. *See* 421 U.S. at 161, 95 S.Ct. at 1521–22.

---

4. The agency has not attempted to defend the deletion on the basis of any FOIA exemption other than Exemption 5. *See* 5 U.S.C. § 552(b)(1)–(9). Therefore, we do not consider whether the deletion could be justified under any other exemption, *see* 5 U.S.C. § 552(a)(4)(B) (in a FOIA suit, "the burden is on the agency to sustain its action"), and thus whether the question raised in this part of our opinion could be avoided.

5. The district court held that, even if the "report" referred to in the letter was the Luttrell memorandum, any reference to it was too uncertain to be an "express" adoption within the meaning of *Sears*. The court relied on *Swisher v. Department of the Air Force*, 495 F.Supp. 337 (W.D.Mo.1980), *aff'd per curiam*, 660 F.2d 369 (8th Cir. 1981). In *Swisher*, a former civilian employee of the Air Force claimed that his discharge was in retaliation for his " 'whistle-blowing' activities." 660 F.2d at 370. An Air Force colonel investigated Swisher's charge and prepared a "Report of Inquiry," which he submitted to the decision-making official, a lieutenant. The lieutenant wrote to Swisher and informed him that, " '[h]aving read the latest inquiry report,' " the lieutenant was satisfied that Swisher's claims were meritless. 495 F.Supp. at 339. Swisher requested a copy of the colonel's report. As in this case, the Air Force deleted the colonel's "conclusions and recommendations," invoking Exemption 5. Both the district court and the court of appeals concluded that the reference to the colonel's report was not an express adoption of the colonel's "recommendations and conclusions." 495 F.Supp. at 340; 660 F.2d at 371.

Because we decide this case on other grounds, we express no opinion on whether a reference to an undisclosed document must refer to a specific portion of the document for there to be an express incorporation of that portion under *Sears*.

Prior to this section of the *Sears* opinion, however, the Court had consistently used the term "final opinion" with reference to 5 U.S.C. § 552(a)(2)(A), a provision of FOIA requiring that "final opinions . . . made in the adjudication of cases" be indexed and "ma[d]e available for public inspection." [6] Most importantly, the *Sears* Court had held that the very documents to which it applied the incorporation by reference exception were "final opinions" within the meaning of § 552(a)(2)(A). *See* 421 U.S. at 158–59, 95 S.Ct. at 1520.

We conclude that *Sears* is not controlling because the letter to Skelton was not a "final opinion[ ] . . . made in the adjudication of [a] *case*[ ]" within the meaning of § 552(a)(2)(A). The documents at issue in *Sears* were legal memoranda that explained the NLRB's reasons for dismissing an unfair labor charge filed by a private party. The private party was attempting to vindicate statutorily protected rights, *see* 29 U.S.C. § 158(a), (b), through a statutorily created procedure, *id.* § 160(b). *See Sears*, 421 U.S. at 138, 95 S.Ct. at 1510. The statute also directed the agency to determine whether the charge should be pursued or dismissed. 29 U.S.C. §§ 153(d), 160(b). If the charge were pursued, the charging party became a party to the proceeding before the agency. *See Sears*, 421 U.S. at 156 n.22, 95 S.Ct. at 1519 n.22. In such a proceeding, the private party could be granted relief for the violation of his statu-

tory rights. 29 U.S.C. § 160(c). If the charge were dismissed, the charging party was entitled by regulation to a brief explanation of reasons and the right to appeal. *See Sears*, 421 U.S. at 138–39, 95 S.Ct. at 1510–11. In this context, which the Court termed "[c]rucial to the decision of this case," *id.* at 138, 95 S.Ct. at 1510, the Court held that the agency's decision to dismiss the charge was an "adjudication" of a "case" against the charging party, *see id.* at 148, 95 S.Ct. at 1515, and thus that the legal memoranda explaining such decisions were "final opinions" within the meaning of § 552(a)(2)(A), *see* 421 U.S. at 158, 95 S.Ct. at 1520 ("The decision to dismiss a charge is a decision in a 'case' . . . .").

By contrast, Skelton's original letter of complaint invoked no substantive statutory right and no statutory procedure for vindicating it. No statute directed the agency to make any determination concerning Skelton's letter. Skelton points to no statute or regulation that would make him a party to an internal disciplinary proceeding. He would not be entitled to personal relief in such a proceeding. The agency's letter responding to Skelton's complaint was thus not the adjudication of a "case" that is at all similar to the "case" at issue in *Sears*.

Moreover, we think it extremely unlikely that Congress intended a letter sent in response to a citizen's letter of complaint to

---

**6.** The Court's first reference to a "final opinion" in *Sears* was in its discussion on the scope of Exemption 5. *See* 421 U.S. at 144 & n.11, 147–48, 95 S.Ct. at 1513 & n.11, 1515. The Court held that any "final opinion" within the meaning of § 552(a)(2)(A) can never come within the scope of the deliberative process privilege because final opinions, by definition, are not "predecisional." *Id.* at 148, 153–54, 95 S.Ct. at 1515, 1518. This holding has led plaintiff to argue that any post-decisional document —here, the letter to Skelton—must be a "final opinion." This proposition, however, is plainly a misreading of *Sears*. While § 552(a)(2)(A) "final opinions" are always outside the scope of the deliberative process privilege, the *Sears* Court made it clear that material outside the scope of the privilege is not always a "final opinion." The Court held that certain documents in *Sears* were not protected by the privilege because they were not predecisional, *see*

*id.* at 155, 95 S.Ct. at 1518–19; then the Court went on to hold separately that the documents were *also* § 552(a)(2)(A) "final opinions" because they were explanations made in the "adjudication" of a "case," *see id.* at 158–59, 95 S.Ct. at 1520. Similarly, the Court held that other documents in *Sears* were clearly not "final opinions" because they were not "final"; the court then indicated that these documents were nevertheless outside the scope of the deliberative process privilege, and it held them entitled to Exemption 5 protection "only because" of the "attorney's work-product policies which Congress clearly incorporated into Exemption 5." *Id.* at 160, 95 S.Ct. at 1521. Thus, *Sears* makes it clear that the question whether a document is a § 552(a)(2)(A) "final opinion" and the question whether a document falls outside the scope of the deliberative process privilege involve separate inquiries.

be a "final opinion" subject to the indexing requirement of § 552(a)(2). That requirement was designed to help the citizen find agency statements "having precedential significance" when he becomes involved in "a controversy with an agency." H.R.Rep. No.1497, 89th Cong., 2d Sess. 8, *reprinted in* [1966] U.S.Code Cong. & Ad.News 2418, 2425. A letter like that sent to Skelton hardly has "precedential significance." We think that by referring to "final opinions ... made in the adjudication of *cases*," Congress was referring to explanations of decisions in proceedings, like that in *Sears*, in which a party has a right to set the agency decision-making process in motion and obtain a determination concerning the statute or other laws the agency is charged with interpreting and administering.

Our conclusion that the agency's letter to Skelton was not a "final opinion" under § 552(a)(2)(A), however, does not end the matter. While the *Sears* Court applied the incorporation by reference exception to § 552(a)(2)(A) "final opinions," the Court did not expressly limit the exception to such documents. Moreover, the purpose of the exception—to compel disclosure of "the reasons for a policy actually adopted," 421 U.S. at 161, 95 S.Ct. at 1521, and thus to forbid "secret law," *see id.* at 153, 156, 161, 95 S.Ct. at 1518, 1519, 1521; 1 K. Davis, *supra*, § 5:33, at 405—would seem to apply to any

agency statement of law or policy that expressly relies on an undisclosed document. *Cf.* 5 U.S.C. § 552(a)(2)(B), (C); 1 K. Davis, *supra*, §§ 5:35, :36 (arguing that all statements of agency law, not just "final opinions," should be excepted from Exemption 5).

Even if such an expanded scope for the exception were appropriate, however, it would have no application in the present case. The letter to Skelton was not a statement of agency law. Unlike the memoranda at issue in *Sears*, the letter was not an interpretation of a law that the agency was charged with administering. The agency had no duty even to entertain Skelton's letter of complaint, much less render a "legal" decision on it. While the letter can be characterized as the adoption of a policy with regard to Skelton's complaint, it is hardly the type of general or uniform policy that necessitates public disclosure.

We do not think that every writing memorializing a "decision," no matter how insignificant or routine the "decision" is, thereby becomes a "final opinion" subject to the incorporation by reference exception.[7] To hold that the agency lost its privilege to withhold Luttrell's opinion because of the letter it sent to Skelton would at best teach the agency not to respond to citizens' complaints, or not to allude to any other documents when it does so.[8] At

---

**7.** Therefore, we decline to adopt the definition of "final opinion" contained in *Bristol Meyers [sic] Co. v. FTC*, 598 F.2d 18 (D.C.Cir.1978): "a written explanation" that accompanies "action taken by the responsible decisionmaker in an agency's decision-making process which has the practical effect of disposing of a matter before the agency." *Id.* at 25. If the word "matter" were given literal effect, this definition would transform a writing explaining any decision—no matter how insignificant—into a "final opinion" subject to the incorporation by reference exception. There has been some indication that the court that suggested this definition will not follow it literally. *See Common Cause v. IRS*, 646 F.2d 656 (D.C.Cir.1981):

The position [that every post-decisional document explaining the reasons for a decision is a "final opinion"], if pushed to its logical limits, could virtually eliminate the governmental privilege. Every rejection of a proposal, no matter how infeasible or insignificant, would become a "final decision" of an

agency. True, the rejection of a policy does embody a decision; but neither the language of Exemption 5 nor the holding in *Sears* demands that such a narrow interpretation of the governmental privilege be adopted in order to protect the public interest in disclosure.

*Id.* at 660 (dictum).

**8.** The district court rejected this argument, relying on the Court's statement in *Sears* that FOIA "requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." 421 U.S. at 162, 95 S.Ct. at 1522. We think that the district court read too much into this statement. In *Sears*, the agency was not required by law to write memoranda explaining its decisions; but it was required by law to "adjudicate" "cases," and thus when it chose to explain its reasons for a decision that explanation became a "final opinion," which § 552(a)(2)(A) required it to disclose. In this

worst, such a holding would deter administrators from giving their opinions for fear that a routine response to a citizen's complaint will be deemed an adoption of those opinions. This last result is precisely what Exemption 5 was designed to prevent. *Sears*, 421 U.S. at 150–51, 95 S.Ct. at 1516–17.

Therefore, we hold that *Sears'* incorporation by reference exception does not apply to the agency's letter to Skelton, and thus that Luttrell's written opinions did not lose their Exemption 5 protection.

AFFIRMED.

case, the agency was not required by law to "adjudicate" Skelton's letter of complaint, nor

was its decision a statement of agency law.