# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 16, 2016    Decided July 29, 2016

No. 15-5201

AMERICAN IMMIGRATION LAWYERS ASSOCIATION,
APPELLANT

v.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00840)

———

*Julie A. Murray* argued the cause for appellant. With her
on the briefs was *Allison M. Zieve*.

*Javier M. Guzman*, Deputy Associate Attorney General,
U.S. Department of Justice, argued the cause for appellees.
With him on the brief were *R. Craig Lawrence* and *Jane M.
Lyons*, Assistant U.S. Attorneys.

Before: HENDERSON, SRINIVASAN and MILLETT, *Circuit
Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Immigration judges are employees of the Department of Justice. The American Immigration Lawyers Association submitted a request to the Department under the Freedom of Information Act (FOIA) seeking disclosure of records related to complaints about the conduct of immigration judges. In response to the request, the government disclosed thousands of pages of records. The government, however, redacted information in those records that it believes is either statutorily exempt from disclosure or non-responsive to the request. The district court upheld both categories of redactions. We disagree as to each.

First, the government invoked one of FOIA's statutory exemptions in redacting the immigration judges' names from all of the disclosed records. The government reasoned that, as a blanket matter, the privacy interest of immigration judges in avoiding disclosure of their names necessarily outweighs the public's interest in learning any of the judges' names. We conclude that the government's across-the-board approach cannot be sustained in light of the variety of privacy and public interests that may be at stake in connection with the disclosure of an immigration judge's name. We therefore remand for a more individualized inquiry into the propriety of redacting judges' names.

Second, with respect to the redactions based on non-responsiveness, we find no statutory basis for redacting ostensibly non-responsive information from a record deemed responsive. Under the statutory framework, once the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate. But the government in this case, after determining that records were responsive to AILA's request,

redacted discrete information within the records on the basis of non-responsiveness even if no statutory exemption shielded the information from disclosure. That approach cannot be squared with the statutory scheme.

The final issue we confront concerns FOIA's establishment of an affirmative obligation to publish certain types of information regardless of any request for disclosure. The particular question is whether records documenting the resolution of complaints against immigration judges fit within the statutory criteria for affirmative disclosure. We agree with the district court that complaint resolutions fall outside the statute's affirmative disclosure mandate.

I.

A.

Immigration judges are career civil-service employees in the Department of Justice's Executive Office of Immigration Review (EOIR). 8 U.S.C. § 1101(b)(4). They preside over "deportation, exclusion, removal, recission, and bond" proceedings for noncitizens charged with violating the immigration laws. Job Announcement at 2 (J.A. 334); 8 U.S.C. § 1101(b)(4); *id.* § 1229a. Their decisions are final unless appealed to the Board of Immigration Appeals (BIA), *see* 8 U.S.C. § 1101(a)(47)(B), and the BIA's final decisions are in turn subject to judicial review, *see* 8 U.S.C. § 1252(a). In fiscal year 2015, only 8% of immigration judges' decisions were appealed to the BIA. EOIR, FY 2015 Statistics Yearbook V1 (April 2016), https://www.justice.gov/eoir/page /file/fysb15/download.

In 2006, in the face of mounting public concerns about "immigration judges who fail to treat aliens appearing before

them with appropriate respect and consideration and who fail to produce [an acceptable] quality of work," then-Attorney General Alberto Gonzales launched a "comprehensive review of the immigration courts." Mem. from Atty. Gen. Alberto Gonzales to Members of the Bd. of Immigration Appeals (Jan. 9, 2006), https://www.justice.gov/sites/default/files/ag/legacy/2009/02/10/ag-010906-boia.pdf. Following the review, the Attorney General announced revised training and evaluation procedures for immigration judges and instituted a requirement that new judges pass a written knowledge examination before hearing cases. *See* Mem. of Atty. Gen. Alberto Gonzales to the Deputy Att. Gen., et al. (Aug. 9, 2006), https://www.justice.gov/sites/default/files/ag/legacy/2009/02/10/ag-080906.pdf. He also ordered a review of existing procedures for processing and responding to complaints about immigration judges. *Id.* at 4.

At the time, the Department had no functioning system for tracking complaints against immigration judges, nor was there any established procedure for resolving complaints. *See* Keller Decl. ¶¶ 16-18 (J.A. 142-43). In May 2010, the Department implemented a new complaint database. *Id.* ¶ 19 (J.A. 143). Under the new system, each new allegation of inappropriate conduct by an immigration judge goes into the database as a complaint and gets assigned a complaint number for tracking purposes. *Id.* "Complaint" is defined broadly to include any "information that comes to the attention of [the Office of the Chief Immigration Judge (OCIJ)] suggesting that an immigration judge may have engaged in conduct, whether in court or out of court, on duty or off duty, which may adversely affect the judge's performance or duties or the fair, effective, or expeditious administration of the business of the immigration courts or the Government, or which may be inconsistent with the agency's mission, goals, rules, policies or procedures." *Id.* ¶ 20 (J.A. 143-44).

The OCIJ oversees the process of receiving, reviewing, tracking, and responding to complaints against immigration judges. Complaints may be initiated either by an outside party or by OCIJ itself if it becomes aware of possible misconduct. *See* EOIR, Summary of OCIJ Procedures for Handling Complaints Against Immigration Judges 1 (May 17, 2010), https://www.justice.gov/sites/default/files/eoir/legacy/2013/05/23/IJComplaintProcess.pdf. Complaints are sometimes dismissed without any type of corrective action, such as when the complaint is frivolous or relates to the merits of an immigration judge's decision. *See id.* at 3. When disciplinary action is appropriate, OCIJ follows a progressive disciplinary model, although "[w]here the conduct warrants it, serious disciplinary action may be imposed in the first instance." *Id.* at 2. A non-frivolous complaint also may be resolved without disciplinary action—for instance, through counseling or individualized training. *Id.*

If there is an "identifiable complainant" for a particular complaint, OCIJ will notify that person upon receiving the complaint and again upon the taking of disciplinary action or closure of the complaint file. *Id.* at 3. Additionally, the government periodically makes available to the public statistical information about complaints and the complaint process. *See id.*

## B.

The Freedom of Information Act generally requires government agencies to make information available to the public, subject to nine enumerated exemptions. *See* 5 U.S.C. § 552(a), (b). For certain types of government records, the FOIA imposes an affirmative obligation—regardless of any request—to publish the information. *Id.* § 552(a)(1), (2).

Other records must be disclosed to the public upon request unless they fall within one of the statutory exemptions. *Id.* § 552(a)(3).

In November 2012, the American Immigration Lawyers Association (AILA) submitted a FOIA request to the Department of Justice seeking information about complaints filed against immigration judges. AILA took that action in light of ongoing concerns about immigration judges' conduct and questions about the transparency and efficacy of the complaint process. AILA's request sought the following information:

(1) All complaints filed against immigration judges;

(2) All records that reflect the resolution of complaints filed against immigration judges, including the type of informal action taken, if any, or formal discipline imposed, if any;

(3) All records that reflect the reasons for resolving complaints against immigration judges and/or findings relied on to resolve complaints against immigration judges, including any reports or memoranda from the Department of Justice Office of Professional Responsibility (OPR) or Office of the Inspector General (OIG);

(4) All records incorporated by reference in documents that reflect the resolution of complaints filed against immigration judges; and

> (5) An index of the records described in paragraphs (2), (3), and (4) to the extent that those records constitute final opinions, including concurring and dissenti[n]g opinions, as well as orders, made in the adjudication of cases, pursuant to 5 U.S.C. § 552(a)(2)(A).

Request Letter (J.A. 121).

In June 2013, after more than six months had gone by without a response, AILA filed this lawsuit in the district court. Shortly thereafter, EOIR began a series of rolling disclosures, providing to AILA many responsive records including complaint files and other documents. By April 2014, EOIR had disclosed some 16,000 pages of documents encompassing 767 complaint files (including both substantiated and unsubstantiated complaints). The complaint files contained information about the date, nature, and resolution of each complaint, copies of relevant documents (e.g., the immigration judge's written decisions and hearing transcripts), emails, and documentation of the disposition and any other action taken in response to the complaint.

EOIR redacted from those records information it deemed exempt from disclosure under FOIA Exemptions 5 and 6. Exemption 5 covers information that would be privileged from disclosure in litigation, *see* 5 U.S.C. § 552(b)(5), and the redactions under that exemption are not at issue here. Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6). Invoking that exemption, EOIR redacted immigration judges' names and other identifying information from the disclosed complaint files. EOIR also, however, identified each

immigration judge by a unique three-digit code in order to permit AILA to connect complaints to a particular judge and to identify patterns or track the progress of discipline. Rodrigues 5/16/14 Decl. ¶ 16 (J.A. 28-29).

In addition, EOIR redacted other information falling outside any of FOIA's enumerated exemptions, including, of particular relevance here, information deemed to be non-responsive to AILA's request even though found within a responsive record. Along with the redacted records, EOIR provided AILA with a *Vaughn* index and affidavits describing its rationale for all of the redactions.

In the district court, AILA challenged both EOIR's redaction under Exemption 6 and its redaction of non-responsive information in responsive records. In addition, AILA argued that FOIA's affirmative-disclosure obligation required publication of OCIJ's complaint resolution decisions. The district court rejected each of AILA's arguments and ultimately granted summary judgment to the government. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review* (*AILA II*), 110 F. Supp. 3d 230, 232 (D.D.C. 2015); *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 76 F. Supp. 3d 184, 193 (D.D.C. 2014). AILA now appeals.

II.

AILA challenges the district court's decisions concerning: (a) the validity of the categorical redaction of immigration judges' names pursuant to Exemption 6; (b) the permissibility of redacting ostensibly non-responsive information within responsive records; and (c) the applicability of FOIA's affirmative disclosure requirement to complaint resolutions. We disagree with the district court's

resolution of the first two issues and remand for further proceedings. As to the third issue, we affirm.

A.

We first consider EOIR's blanket redaction of immigration judges' names under FOIA's Exemption 6. The Supreme Court has explained that FOIA's exemptions are "explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal citations and quotation marks omitted). The agency bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold. *See Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice* (*CREW*), 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Our review calls for us to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citations omitted). An agency can carry its burden by submitting a *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), along with affidavits from agency employees that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *CREW*, 746 F.3d at 1088 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

FOIA's Exemption 6 enables the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). We generally

follow a two-step process when considering withholdings or redactions under Exemption 6. First, we "determine whether the [records] are personnel, medical, or 'similar' files covered by Exemption 6." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). There is no dispute that the records sought by AILA meet that criterion. Second, if, as here, the records are covered by the exemption, we "determine whether their disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* (quoting 5 U.S.C. § 552(b)(6)). The dispute in this case concerns that second step.

In assessing whether the disclosure of the information at issue—immigration judges' names and identifying information—would rise to the level of a "clearly unwarranted invasion of personal privacy," we "'balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect.'" *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 776 (1989)). Here, we follow another two-step process. The first step, which, again, no one disputes is satisfied here, requires determining that "disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (internal quotation marks omitted). Second, if so, we weigh the privacy interest at stake "against the public interest in the release of the records." *Id.* (internal quotation marks omitted).

"[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *FLRA*, 510 U.S.

at 495 (quoting *Reporters Comm.*, 489 U.S. at 775) (alteration and italics omitted). In other words, disclosure of government records under FOIA is meant to help the public stay informed about "what their government is up to." *Reporters Comm.*, 489 U.S. at 773 (internal quotation marks omitted).

AILA argues that ongoing concerns about the complaint process and disciplinary action (or lack thereof) imposed on immigration judges are relevant to understanding what the agency "is up to." *Id.* We agree with AILA as a general matter, and have recognized similar public interests in our prior cases. *See, e.g.*, *CREW*, 746 F.3d at 1093. We also note that EOIR has disclosed a substantial amount of information concerning the complaint system and the substance of actual complaints, and has made efforts to ensure that its disclosures are accessible and useful (including establishing a system to identify judges by anonymous three-digit codes, thereby enabling AILA—and the public—to track repeat offenders even without knowing the names of individual judges).

The relevant question, then, is not whether disclosing immigration judges' names would serve the public interest in disclosure in the abstract. Instead, the question is whether, given the information already disclosed by EOIR, the "incremental value" served by disclosing an immigration judge's name outweighs that person's privacy interest. *Schrecker v. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003). Even given that more targeted inquiry, we conclude that EOIR's across-the-board redaction of all judges' names from all responsive documents was inadequately justified.

In an affidavit submitted with its *Vaughn* index, EOIR outlined the rationale for its Exemption 6 redactions in categorical terms. It explained its view that all immigration judges have a privacy interest in withholding their names, and

that their privacy interest, as a blanket matter, necessarily outweighs any public interest in learning any judge's name. Rodrigues 5/16/14 Decl. ¶¶ 55-82 (J.A. 42-60). The affidavit went on to describe the different categories of redacted information (e.g., names, gender pronouns) and to explain how each category relates to the general privacy interest of all immigration judges. *Id.* None of EOIR's materials addresses the privacy interests of individual immigration judges, or any potential public interest in learning individual immigration judges' names in particular circumstances.

That categorical approach stands in contrast to EOIR's support for its Exemption 5 redactions (which are unchallenged here). For each of its Exemption 5 redactions, EOIR detailed the reason the exemption applies to the particular piece of information in question. It devoted a paragraph to each redaction (168 paragraphs in all), including, for instance, specific information about the authors and recipients of memoranda and emails as well as the general topics discussed in each record. *See id.* ¶¶ 83-251 (J.A. 60-118).

Exemption 6, we have explained, "does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'" *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 153 (D.C. Cir. 2006) (quoting *Armstrong v. Exec. Office of the President,* 97 F.3d 575, 582 (D.C. Cir. 1996)); *see also Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894-95 (D.C. Cir. 1995). To be sure, in certain situations we have allowed an agency to justify withholding or redacting records "category-of-document by category-of-document" rather than "document-by-document." *CREW*, 746 F.3d at 1088 (quoting *Gallant v. NLRB,* 26 F.3d 168, 173 (D.C. Cir. 1994)). But we have permitted such an approach

only if the documents within each category are sufficiently similar—and the categories are sufficiently well-defined and distinct—"to allow a court to determine whether the specific claimed exemptions are properly applied."  *Id.* (quoting *Gallant*, 26 F.3d at 173).

In other words, "the range of circumstances included in [a] category [must] 'characteristically support[] an inference' that the statutory requirements for exemption are satisfied." *Nation Magazine*, 71 F.3d at 893 (quoting *United States v. Landano*, 508 U.S. 165, 176-80 (1993)).  The question, then, is whether there has been a sufficient showing that the balancing analysis under Exemption 6 would yield a uniform answer across the entire proffered category, regardless of any variation among the individual records or persons falling within it.  We cannot say that is true here.

The records at issue encompass all complaints OCIJ received during the relevant time period:  whether substantiated or unsubstantiated, whether related to serious issues or comparatively trivial ones, and whether about immigration judges' conduct on the bench or their conduct outside the workplace.  Moreover, the privacy interests at stake encompass those of each immigration judge subjected to any of the wide variety of types of complaints:  whether a sitting immigration judge or someone no longer on the bench, whether a judge who has faced only one complaint or a judge who has repeatedly been the target of complaints, and whether the judge has been subjected to some type of discipline or has avoided disciplinary action (and the reasons why).  Given the variety in types of complaints and circumstances of individual immigration judges, not every judge has the same privacy interests at stake and not every complaint would equally enlighten the public about "what their government is up to."

14

*Reporters Comm.*, 489 U.S. at 773; *see Prison Legal News v. Samuels*, 787 F.3d 1142, 1150-51 (D.C. Cir. 2015).

The interests on both sides of the Exemption 6 balancing test might vary in substantial measure with respect to different immigration judges (and perhaps different complaints). A retired immigration judge—who, after all, is a private citizen—presumably would have a greater privacy interest in avoiding disclosure of her name than would an immigration judge who sits on the bench today. Similarly, the public interest likely would be more pronounced in the case of a sitting immigration judge, who continues to make decisions as an employee of the Department of Justice, than in the case of a former judge. Additionally, disclosing the name of an immigration judge subject to numerous and/or serious substantiated complaints might shed considerable light on matters of public interest, whereas disclosing the name of an immigration judge subject to a single, unsubstantiated complaint might not. For instance, in the case of a sitting judge with a substantial number of serious and substantiated complaints, knowledge of her identity would enable the public to examine her official actions (including decisions), both past and future, and to assess any possible implications of those complaints for the conduct of her official responsibilities. By enabling the public to make such connections, knowing the identity of that judge could shed considerably more light on "what the[] government is up to," *Reporters Comm.*, 489 U.S. at 773, than simply knowing about the existence of some anonymous judge with a certain number of complaints against her.

"If it [were] always true that the damage to a[n] [immigration judge's] privacy interest from a [complaint file]'s production outweigh[ed] the FOIA-based public value of such disclosure, then it [would be] perfectly appropriate to

conclude as a categorical matter that" disclosing immigration judges' names would constitute a clearly unwarranted invasion of personal privacy. *Reporters Comm.*, 489 U.S. at 779. But here, variations in the privacy and public interests at stake leave us unable to find, at least as a blanket matter, that the Exemption 6 balance tips in favor of withholding immigration judges' names in all circumstances. That is not to say, necessarily, that EOIR could not ultimately support redacting identifying information in all cases if its justifications for doing so were framed in a more targeted manner. That question is not before us, however. Because EOIR here sought to justify its withholding of immigration judges' names in purely categorical, across-the-board terms, it has not carried its burden to justify the Exemption 6 redactions.

On remand, if EOIR continues to claim that Exemption 6 warrants withholding the names of all immigration judges, it should make a more particularized showing for defined subgroups of judges or for individual judges. *See Prison Legal News*, 787 F.3d at 1151-52. The district court would then "engage in ad hoc balancing of the competing interests at stake" for each subgroup of immigration judges or for each judge. *Nation Magazine*, 71 F.3d at 895. The court, upon conducting the Exemption 6 balancing, might determine that the balance tips towards withholding in some, many, or all instances. And of course, if EOIR allocates immigration judges into subgroups and the grouping methodology is inadequate, the court may require EOIR to further separate the judges or make individual showings for each judge. At this stage, it suffices for us to conclude that "a categorical rule is inappropriate." *CREW*, 746 F.3d at 1096 (emphasis deleted).

B.

We next turn to EOIR's redaction of ostensibly non-responsive material within responsive records.  In response to AILA's motion for summary judgment, EOIR submitted a *Vaughn* index and affidavit explaining its non-responsive redactions.  EOIR claimed it was under "no obligation . . . to release information that concerned matters unrelated to [AILA]'s FOIA request because the information [wa]s outside the scope of the request."  Rodrigues 7/17/14 Supp. Decl. ¶ 6 (J.A. 477) (citing 5 U.S.C. § 552(a)(3)(A)).  (Although EOIR claims that it was not required to submit a *Vaughn* index, Appellee Br. 44, we have no need to decide that issue today.)

AILA subsequently filed a motion to compel production of the non-responsive material.   In an affidavit filed in response to that motion, EOIR noted that there were 64 pages of responsive records with non-responsive material redacted.  It gave examples of the reasons for those redactions.  "The type of non-responsive information" redacted evidently includes "information about the need for an immigration judge to clean his/her office, whether an immigration judge had returned to the bench after a security issue, [and] the discussion of vacation plans[,] and personal medical conditions of EOIR staff."  Rodrigues 5/14/15 Decl. ¶ 26 (J.A. 634).   In its *Vaughn* index, EOIR included short explanations specific to each redaction or withheld document.

The district court, relying on its own past practice and that of other district courts in recent years, denied AILA's motion to compel production of the non-responsive material. *AILA II*, 110 F. Supp. 3d 230.  Our court, however, has yet to address the issue.  AILA's appeal thus brings to us a question of first impression:  if the government identifies a record as responsive to a FOIA request, can the government

nonetheless redact particular information within the responsive record on the basis that the information is non-responsive? We find no authority in the statute for the government to do so.

FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The statute allows that, in certain specified situations inapplicable here, the agency may "treat the [responsive] records as not subject to" the disclosure obligation. *Id*. § 552(c)(1)-(3). But responsive records are generally subject to the disclosure obligation. The sole FOIA provision enabling the government to withhold responsive records is section 552(b), which sets forth the nine statutory exemptions. That section also explicitly allows for the redaction of exempt information within responsive records, providing that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." *Id.* § 552(b).

The statute thus sets forth the broad outlines of a process for agencies to follow when responding to FOIA requests: first, identify responsive records; second, identify those responsive records or portions of responsive records that are statutorily exempt from disclosure; and third, if necessary and feasible, redact exempt information from the responsive records. The statute does not provide for withholding responsive but non-exempt records or for redacting non-exempt information within responsive records.

In light of the Supreme Court's instruction that FOIA's exemptions are "explicitly made exclusive and must be narrowly construed," *Milner*, 562 U.S. at 565 (internal citations and quotation marks omitted), we do not see how EOIR's non-responsive redactions here can be squared with the statute. Those redactions find no home in FOIA's scheme. Rather, once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record—i.e., as a unit—except insofar as the agency may redact information falling within a statutory exemption. *See* 5 U.S.C. § 552(a)(3)(A), (b). In the context of a record containing exempt information, accordingly, the "focus of the FOIA is information, not documents." *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1997). But outside of that context, FOIA calls for disclosure of a responsive record, not disclosure of responsive information within a record.

In particular, nothing in the statute suggests that the agency may parse a responsive record to redact specific information within it even if none of the statutory exemptions shields that information from disclosure. To the contrary, in expressly allowing for—and only for—"deletion of the portions" of a responsive record "which are exempt," 5 U.S.C. § 552(b), the statute reinforces the absence of any authority to delete portions of a responsive record which are *not* exempt. Indeed, the statute specifies that it "does not authorize withholding of information . . . except as specifically stated in" its terms. *Id.* § 552(d). In short, Congress determined that the statutory exemptions sufficiently cover the types of information which it is appropriate for the government to redact from a responsive document—e.g., information "related solely to the internal personnel rules and practices of an agency," *id.* § 552(b)(2); certain types of "trade secrets and commercial or financial

information," *id.* § 552(b)(4); and "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," *id.* § 552(b)(5).

The practical significance of FOIA's command to disclose a responsive record as a unit (after deletion of exempt information) depends on how one conceives of a "record." Here, the parties have not addressed the antecedent question of what constitutes a distinct "record" for FOIA purposes, and we have no cause to examine the issue. Rather, for purposes of this case, we simply take as a given EOIR's *own* understanding of what constitutes a responsive "record," as indicated by its disclosures in response to AILA's request.

Although FOIA includes a definitions section, *id.* § 551, that section provides no definition of the term "record." Elsewhere, the statute describes the term "record" as "includ[ing] any information that would be an agency record . . . when maintained by an agency in any format, including an electronic format," *id.* § 552(f), but that description provides little help in understanding what is a "record" in the first place. *Compare, e.g.*, *id.* § 552a(a)(4) (defining "record" under the Privacy Act as "any item, collection, or grouping of information"); 44 U.S.C. § 2201(2) (defining "Presidential records" as "documentary materials, or any reasonably segregable portion thereof," meeting certain criteria); *id.* § 3301 (defining "records" under the Federal Records Act as "all recorded information, regardless of form or characteristics," meeting certain criteria).

Under FOIA, agencies instead in effect define a "record" when they undertake the process of identifying records that are responsive to a request. *See id.* § 552(f)(2). We have no occasion here to consider the range of possible ways in which

an agency might conceive of a "record." But we note that, in guidance to agencies on processing FOIA requests, the Department of Justice addresses the issue of documents that cover multiple, unrelated topics. DOJ, OIP Guidance: Determining the Scope of a FOIA Request, FOIA Update, Vol. XVI, No. 3 (1995), https://www.justice.gov/oip/blog/foia-update-oip-guidance-determining-scope-foia-request. While using different terminology, that guidance sets forth a number of considerations for agencies to take into account when determining whether it is appropriate to divide such a document into discrete "records." *Id.*

EOIR notes that email can pose special challenges because "it is not unusual for an email chain to traverse a variety of topics having no relationship to the subject of a FOIA request." Gov't's Br. 43. We understand EOIR's concerns, but insofar as they relate to the policy choices embedded in the scope of the statute's disclosure mandate, they are best directed to Congress. We must interpret the statute as written. For our purposes, the dispositive point is that, once an agency *itself* identifies a particular document or collection of material—such as a chain of emails—as a responsive "record," the only information the agency may redact from that record is that falling within one of the statutory exemptions.

Insofar as the government in a different case might undertake to conceive of an individual "record" more narrowly, we note that, here, the agency's redactions on grounds of non-responsiveness went down to the level of an individual sentence within a paragraph within an email message. We find it difficult to believe that any reasonable understanding of a "record" would permit withholding an individual sentence within a paragraph within an email on the

ground that the sentence alone could be conceived of as a distinct, non-responsive "record."

For the reasons we have explained, it was improper for EOIR to redact non-responsive information from responsive records. We thus remand to the district court for assessment of whether any of the information impermissibly redacted as non-responsive might be permissibly redacted as statutorily exempt. If not, EOIR must disclose the information.

C.

Under FOIA's affirmative disclosure requirement, "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying," among other things, "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases." 5 U.S.C. § 552(a)(2). AILA claims that complaint resolution decisions for immigration judges amount to "final opinions [and] orders, made in the adjudication of cases" and thus must affirmatively be disclosed by EOIR regardless of any request. We find no error in the district court's rejection of that claim.

Complaint resolutions do not result from an adjudicatory process such that we would consider them "final opinions" rendered in the "adjudication of [a] case[]." *Id.* In *Skelton v. United States Postal Service*, the Fifth Circuit emphasized that the ability of a third party to participate as a party and to obtain "personal relief" in a proceeding bears significantly on the determination whether, for purposes of FOIA's affirmative disclosure requirement, the proceeding amounts to an "adjudication of a 'case'" culminating in a final order. 678 F.2d 35, 40 (5th Cir. 1982). The court interpreted the statute to refer to final opinions resulting from proceedings "in which

a party has a right to set the agency decision-making process in motion and obtain a determination concerning the statute or other laws the agency is charged with interpreting and administering." *Id.* at 41. We agree with that approach.

AILA is right, of course, that individuals may set in motion the complaint process for immigration judges. Individual complainants (should they choose to identify themselves) are even entitled to receive notifications when their complaints are resolved. But nothing in the complaint process makes an individual complainant a party to the investigation or to any other aspect of the process. Complaint resolutions thus do not reflect a final decision as to the rights of outside parties; nor do they entitle any outside parties to any form of relief. As a result, they are not subject to FOIA's affirmative disclosure requirement.

In addition, the affirmative disclosure requirement has long been understood to mandate disclosure of decisions that "constitute the making of law or policy by an agency." *Common Cause v. IRS*, 646 F.2d 656, 660 (D.C. Cir. 1981); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975). Complaint resolution decisions do not fit that mold. They set no precedent, have no binding force on the agency in later decisions, and indeed have no effect on anyone except the individual immigration judge who is the subject of the particular complaint. We fail to see how the affirmative disclosure of complaint resolution decisions would serve the requirement's core purpose—preventing the creation of "secret (agency) law," *Sears*, 421 U.S. at 153—when each resolution is sui generis. *See Leeds v. Comm'r of Patents & Trademarks*, 955 F.2d 757, 762 (D.C. Cir. 1992); *Vietnam Veterans of Amer. v. Dep't of Navy*, 876 F.2d 164, 165 (D.C. Cir. 1989).

23

* * * * *

For the foregoing reasons, we affirm the district court in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

*So ordered.*