# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 9, 2021          Decided June 1, 2021

No. 20-5182

CAUSE OF ACTION INSTITUTE,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02373)

———

*Ryan P. Mulvey* argued the cause for appellant. With him on the briefs was *R. James Valvo, III*.

*Casen B. Ross,* Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey Bossert Clark,* Acting Assistant Attorney General, and *Daniel Tenny*, Attorney.

Before: RAO and WALKER, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Concurring opinion filed by *Circuit Judge* RAO.

EDWARDS, *Senior Circuit Judge*: In December 2013, Appellant Cause of Action Institute submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request to the Office of Information Policy ("OIP") in the Department of Justice ("DOJ") seeking access to specified DOJ records. OIP issued a "final response" to Appellant on January 30, 2018. Joint Appendix ("J.A.") 23. In that response, OIP indicated that it had "located 143 pages that contain[ed] records that [were] responsive to [Appellant's] request." *Id.* Appellant filed an administrative appeal claiming that DOJ had improperly segmented responsive records into what it claimed were multiple smaller "records" and, in doing so, improperly withheld information that was not otherwise exempt under FOIA. OIP denied the appeal.

At issue are three cover letters and four Questions for the Record ("QFR") documents that were identified by OIP as responsive to Appellant's FOIA request. The QFR documents are described in detail in part I.B., *infra*. Each QFR document contains questions posed by members of Congress and, for two of the documents, the corresponding answers provided by DOJ. Each document is self-contained, with a single, overarching heading identifying the contents of the document. The questions and answers in each document are consecutively numbered, and all but one of the documents has consecutively numbered pages.

Although it is undisputed that OIP determined that the four QFR documents contained material responsive to Appellant's FOIA request, DOJ nonetheless removed pages and redacted

material from the documents. DOJ does not claim that the pages that were removed or the material that was redacted are exempt from disclosure under FOIA. Rather, DOJ simply claims that these pages and material need not be disclosed to Appellant because they constitute "Non-Responsive Record[s]." *See, e.g.*, J.A. 36.

In October 2018, Appellant filed a suit in District Court, challenging DOJ's refusal to disclose the pages that had been deleted from the QFR documents and the questions and answers that had been redacted and labeled "Non-Responsive." Appellant also challenged DOJ's alleged policy or practice of segmenting one record into multiple records to avoid disclosure. The District Court largely upheld DOJ's actions and dismissed Appellant's policy or practice claim for lack of standing. *See Cause of Action Inst. v. DOJ*, 453 F. Supp. 3d 368, 378, 380 (D.D.C. 2020). Appellant now appeals.

On the record before us, we hold that DOJ's position is untenable. We therefore reverse the judgment of the District Court denying Appellant's request for disclosure of the QFR documents. This court has held that "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Am. Immigr. Laws. Ass'n v. Exec. Off. for Immigr. Rev.* ("*AILA*"), 830 F.3d 667, 677 (D.C. Cir. 2016) (citing 5 U.S.C. § 552(a)(3)(A), (b)). This is because "FOIA calls for disclosure of a responsive record, not disclosure of responsive information within a record." *Id.* Each of the QFR documents at issue here constitutes a unitary record, as demonstrated by DOJ's own treatment of those documents. Therefore, DOJ violated the requirements of FOIA and the commands of *AILA* by withholding non-exempt information from within the responsive records. We reverse the

District Court's judgment to the contrary. However, we dismiss Appellant's challenge to DOJ's alleged policy or practice as unripe.

## I. BACKGROUND

### A. Legal Background

#### 1. FOIA

FOIA provides that "upon [receiving] any request for *records*" that reasonably describes the records and meets procedural requirements, agencies "shall make . . . *records* promptly available." 5 U.S.C. § 552(a)(3)(A) (emphases added). "[O]nce the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of [FOIA's] statutory exemptions." *AILA*, 830 F.3d at 670.

FOIA's text provides little precise guidance on what constitutes a record, and no definition of that term. *See id.* at 678. However, 5 U.S.C. § 552(f)(2) states that "'record' and any other term used in [the Act] in reference to information includes . . . any information that would be an agency record . . . when maintained by an agency in any format, including an electronic format." FOIA thus distinguishes between "records" and "information." *See also, e.g.*, 5 U.S.C. § 552(a)(8)(A) ("An agency shall . . . consider whether partial disclosure of *information* is possible whenever the agency determines that a full disclosure of a requested *record* is not possible." (emphases added)); *id.* § 552(b) ("Any reasonably segregable portion of a *record* shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of *information* deleted . . .

shall be indicated on the released portion of the *record*." (emphases added)).

*2. The* AILA *Decision*

As noted above, in *AILA*, this court held that "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as" a statutory exemption applies. 830 F.3d at 677 (citation omitted). The court emphasized that "nothing in the statute suggests that the agency may parse a responsive record to redact specific information within it even if none of the statutory exemptions shields that information from disclosure." *Id.* This is because "FOIA calls for disclosure of a responsive record, not disclosure of responsive information within a record." *Id.*

The *AILA* court acknowledged that it had "no cause to examine" the "antecedent question of what constitutes a distinct 'record' for FOIA purposes," because the agency in that case had itself identified the relevant material as a responsive "record" and then redacted information from within the record. *See id.* at 678-79. The court thus declined "to consider the range of possible ways in which an agency might conceive of a 'record.'" *Id.* at 678.

The *AILA* decision offered some words of caution, however:

> Insofar as the government in a different case might undertake to conceive of an individual "record" more narrowly, we note that, here, the agency's redactions on grounds of non-responsiveness went down to the level of an individual sentence within a paragraph within an email message. We find it difficult to

> believe that any reasonable understanding of a "record" would permit withholding an individual sentence within a paragraph within an email on the ground that the sentence alone could be conceived of as a distinct, non-responsive "record."

*Id.* at 679. Following the issuance of *AILA*, DOJ's Office of Information Policy updated its guidance on "Defining a 'Record' under the FOIA." DEP'T OF JUSTICE, OIP GUIDANCE: DEFINING A "RECORD" UNDER THE FOIA (updated Feb. 15, 2017), J.A. 64-66 ("OIP Guidance"). DOJ does not claim that the OIP Guidance has the force of law. Rather, it merely offers advice to agency officials regarding how they might handle FOIA claims.

## B. Facts and Procedural History

Appellant Cause of Action Institute is a non-profit government oversight organization. In December 2013, Appellant submitted a FOIA request to OIP, seeking release of several categories of DOJ records. OIP and Appellant agreed in April 2016 that one portion of the request would cover "all communications between a Department political appointee and Members of Congress, their staff, or employees of the White House relating to grants of the Office of Justice Programs, Office on Violence Against Women, and Community Oriented Policing Services" and "records relating to Executive Order 13457." *See* J.A. 23. Executive Order 13,457 provides that "executive agencies should not commit, obligate, or expend funds on the basis of earmarks included in any non-statutory source, including requests in . . . communications from or on behalf of Members of Congress," except in limited circumstances. Exec. Order No. 13,457, 73 Fed. Reg. 6,417, 6,417 (Jan. 29, 2008).

OIP initially identified 1,021 pages responsive to Appellant's request. OIP referred most of those pages to other units in DOJ for processing. OIP then issued a "final response" on January 30, 2018. This final response advised Appellant that OIP had:

> located 143 pages that contain records that are responsive to your request. [We] have determined that thirty-two pages are appropriate for release without excisions, and one page is appropriate for release with excisions made pursuant to Exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6). Copies are enclosed. Please be advised that these pages also contained non-responsive records, which we have marked accordingly.
>
> Furthermore, [we] have determined that seventy-one pages should be withheld in full pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5).

J.A. 23.

As noted above, three cover letters and four QFR documents are at issue in this case. These materials include:

> (1)  *A letter dated January 4, 2011 from Assistant Attorney General Ronald Weich to John Conyers, Jr., Chairman of the U.S. House Committee on the Judiciary*. J.A. 30. This letter transmitted DOJ's responses to questions for the record arising from the appearance of Attorney General Eric Holder before the Committee on May 13, 2010, at an oversight hearing.

The QFR document is consecutively paginated, contains consecutively numbered questions, and is labeled with an overarching title. J.A. 31. Subheadings indicate which member of Congress submitted each set of questions. DOJ's responses are located directly beneath each question. In responding to Appellant's FOIA request, DOJ omitted some pages of the QFR document and redacted other portions with the label "Non-Responsive Record." In two instances, DOJ redacted a sub-question and its answer while disclosing the larger umbrella question and its answer.

(2) *A letter dated September 14, 2010 from Assistant Attorney General Ronald Weich to Patrick Leahy, Chairman of the U.S. Senate Committee on the Judiciary*. J.A. 44. The letter transmitted DOJ's responses to questions for the record arising from the appearance of Susan Carbon, Director of the Office on Violence Against Women, before the Committee on May 5, 2010, at a hearing entitled "The Increased Importance of the Violence Against Women Act in a Time of Economic Crisis." The QFR document is consecutively paginated, contains consecutively numbered questions, and includes an overarching title. J.A. 45. In responding to Appellant's FOIA request, DOJ redacted some questions and their responses as "Non-Responsive Record[s]."

(3) *A letter dated April 21, 2010 from Patrick Leahy, Chairman of the U.S. Senate Committee on the Judiciary to Attorney General Eric H. Holder, Jr.* J.A. 51. This letter transmitted two QFR documents from members of the U.S. Senate Committee on the Judiciary. One QFR document is titled "Written

Questions of Senator Tom Coburn, M.D." J.A. 52. The questions in this document are consecutively numbered, as are the page numbers. The other QFR document is titled "Questions Submitted by U.S. Senator Russell D. Feingold to Attorney General Eric H. Holder Jr." J.A. 56. The questions in this document are consecutively numbered, although there are no page numbers. In both QFR documents, DOJ redacted some of the questions as "Non-Responsive Record[s]."

DOJ never claimed that any of the material that was deleted from or redacted in the QFR documents was exempt from disclosure under FOIA.

Appellant filed an administrative appeal challenging DOJ's withholdings from the foregoing QFR documents. DOJ denied the appeal in March 2018.

In October 2018, Appellant filed suit in District Court, claiming that DOJ (1) improperly withheld responsive records, and (2) maintained an unlawful policy and practice, described in the OIP Guidance, of segmenting one record into multiple records to avoid disclosure. On April 5, 2019, DOJ reprocessed the contested records, removing the redactions of two sub-question and answer pairings that were underneath responsive parent questions. That same day, DOJ moved for summary judgment. Appellant filed a cross-motion for summary judgment later that month.

In April 2020, the District Court granted in part and denied in part each party's motion. The court held that "a record in this case should be defined as a question, including all subparts or sub-questions, and any corresponding answers." *Cause of Action Inst.*, 453 F. Supp. 3d at 375. The court ordered DOJ to

produce any withheld sub-question-and-answer pairings that were underneath a responsive parent question.

The District Court also dismissed for lack of standing Appellant's claim that DOJ has a policy or practice of violating FOIA due to the OIP Guidance's definition of "record." *See id.* at 378-80. The court held that Appellant had not demonstrated a likelihood of continuing injury in the future, given that the court had largely upheld DOJ's application of its policy. Appellant filed a notice of appeal in June 2020.

## II. ANALYSIS

### A. Standard of Review

We review de novo both the District Court's grant of summary judgment and its dismissal of a claim for lack of standing. *Kingman Park Civic Ass'n v. Bowser*, 815 F.3d 36, 38-39 (D.C. Cir. 2016). The agency bears the burden of showing it complied with the requirements of FOIA. *See Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

### B. The Individual Questions and Answers at Issue in this Case Are Not "Records" Under FOIA.

DOJ's position in this case is that *each individual question and its corresponding answer* within each of the self-contained QFR documents constitutes a separate "record" under FOIA. Resting on this claim, DOJ maintains that if it determined that a particular question-and-answer pairing within a QFR document was unresponsive to Appellant's FOIA request, DOJ could decline to disclose the material even though none of the material in the QFR document was exempt from disclosure. Though our case law provides for a "range of possible ways in

which an agency might conceive of a 'record,'" we reject DOJ's approach as an untenable application of FOIA, outside the range of reasonableness. *AILA*, 830 F.3d at 678. OIP itself treated the self-contained QFR documents as unitary "records" and released the documents, albeit with portions removed, as responsive to Appellant's FOIA request. Therefore, as we explained in *AILA*, "once an agency identifies a record it deems responsive to a FOIA request, the statute compels disclosure of the responsive record – i.e., as a unit – except insofar as the agency may redact information falling within a statutory exemption." *Id.* at 677 (citation omitted).

There can be little dispute that OIP, on behalf of DOJ, treated each one of the self-contained QFR documents as a unitary "record" in this case. DOJ admits that the questions and answers "were compiled into one large file for 'efficiency.'" *See* Br. for Appellee 27 (citation omitted); *see also* Decl. of Vanessa R. Brinkmann ¶ 22, J.A. 90 (referring to the QFRs as "a single, compiled document"). The Agency released full documents, containing overarching titles and consecutive numbering, and merely redacted some questions and answers from within those documents. *See* J.A. 31 (titled "Questions for the Record"); J.A. 45 (titled "Questions for Director Carbon on 'The Increased Importance of the Violence Against Women Act in a Time of Economic Crisis' from Senator Sessions"); J.A. 52 (titled "Written Questions of Senator Tom Coburn, M.D."); J.A. 56 (titled "Senate Judiciary Committee Hearing . . . Questions Submitted by U.S. Senator Russell D. Feingold"). Indeed, in one instance the Agency released an entire page containing only a redacted question. *See* J.A. 57. This action is inconsistent with DOJ's claimed position that each question constitutes a separate record, and in fact indicates that DOJ viewed the entire QFR document in which that question appeared as a unitary "record." Under these circumstances, the question-and-answer pairings were not

individual "records," but rather were items of information within records.

*AILA* made clear that "once the government concludes that a particular record is responsive to a disclosure request, the sole basis on which it may withhold particular information within that record is if the information falls within one of the statutory exemptions from FOIA's disclosure mandate." 830 F.3d at 670. Here, once DOJ identified the compiled QFR documents as responsive to Appellant's request, it was not permitted to redact information from those documents, except as permitted by FOIA's statutory exemptions. *See Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006) (explaining that courts must "be careful to ensure that the term 'agency records' not be manipulated to avoid the basic structure of the FOIA: records are presumptively disclosable unless the government can show that one of the enumerated exemptions applies" (internal quotation marks, alterations, and citation omitted)). The Agency's own disclosures demonstrate that it regarded each QFR document, rather than the individual questions and answers therein, as a record. By redacting non-exempt material from within those records, the Agency violated FOIA and this court's precedent.

## C. The Policy or Practice Claim Is Not Ripe for Review

Appellant also contends that the OIP Guidance "violates FOIA and [DOJ's] reliance on the [G]uidance constitutes an unlawful policy or practice." Br. of Appellant 11. The District Court found that Appellant lacked standing to challenge the OIP Guidance and thus dismissed Appellant's policy or practice claim. We do not agree that Appellant lacked standing to pursue this claim. Nevertheless, we hold that the claim must be dismissed because it is not ripe for review.

It is clear that, at the outset of this action, Appellant had standing to challenge DOJ's action redacting non-exempt material from within the disputed records and any Agency policy invoked by DOJ in support of its decision not to disclose materials to Appellant. *See, e.g.*, *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 88, 91, 96 n.53 (D.C. Cir. 1986) (holding that plaintiffs had standing to continue pressing their facial challenge to government guidelines even after being awarded a fee waiver in connection with their FOIA request because they were frequent FOIA requesters who would be affected by the guidelines in the future and the challenge was ripe for judicial review); *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). Appellant here essentially asserts that it is in the same situation as the plaintiffs in *Better Government*, and therefore, has standing to challenge both the specific action giving rise to this case *and* the OIP Guidance.

In addition, Appellant's challenge to the OIP Guidance is not rendered moot merely because we agree that DOJ violated FOIA in this case by redacting non-exempt material from the records at issue. It is generally understood that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters.*, 837 F.2d at 491 (citation omitted). However, to pursue its challenge to the OIP Guidance once its request for specific relief is no longer at issue, Appellant must still demonstrate standing to challenge the disputed policy or practice. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *Cierco v. Mnuchin*, 857 F.3d 407, 415-17 (D.C. Cir. 2017). This jurisdictional requirement poses no problem here. Appellant alleges that DOJ maintains an impermissible policy, memorialized in the OIP Guidance, of segmenting one record into multiple records in order to avoid disclosure. And Appellant further contends that, "because it [has] 'additional

FOIA requests' pending with DOJ at various stages of the administrative process, it [is] 'at risk of receiving the same improper treatment in the future' by application of the guidance." Br. of Appellant 50-51 (citation omitted). Therefore, Appellant has standing to challenge the OIP Guidance and the claim is not moot. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121–22 (1974) (declining to dismiss a case as moot because, "even though the case for an injunction [had] dissolved . . . the parties to the principal controversy . . . still retain[ed] sufficient interests and injury as to justify the award of declaratory relief"); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185-87, 189-94 (2000) (holding that plaintiffs had standing to pursue a claim for civil penalties under the Clean Water Act, and the claim was not moot, even after the defendant had achieved compliance with the Act during the course of the litigation); *Better Gov't Ass'n*, 780 F.2d 86, 91, 96 n.53 (plaintiffs had standing to pursue challenge to agency policy, and challenge was not moot, even after their specific claim was resolved).

Although Appellant's standing cannot be seriously challenged and the case is not moot, the challenge to the OIP Guidance is not ripe for review. "[I]f a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy, then declaratory relief may be granted *if* the claim is ripe for review." *City of Houston v. HUD*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (emphasis added). If a claim is not ripe for review, we are constrained to dismiss.

"To determine whether a dispute is ripe for judicial consideration, we must evaluate (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *VanderKam v. VanderKam*,

776 F.3d 883, 888 (D.C. Cir. 2015) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Appellant's challenge to the OIP Guidance is unfit for judicial review. "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). That is the situation we face with respect to possible future applications of the OIP Guidance.

Appellant asks us to declare that DOJ's alleged policy of segmenting one record into multiple records cannot be lawful under any circumstances. "We do not have sufficient confidence in our powers of imagination to affirm such a negative. The operation of [FOIA] is better grasped when viewed in light of a particular application. Here, as is often true, '[d]etermination of the scope [of the purported policy] in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.'" *See id.* at 301 (second alteration in original) (quoting *Int'l Longshoremen's and Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 224 (1954)). "[J]udicial appraisal [of the issue] is likely to stand on a much surer footing in the context of a specific application of [agency policy] than could be the case in the framework of [a] generalized challenge." *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 396 (D.C. Cir. 2013) (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967)).

In this case, DOJ treated each one of the compiled QFR documents as a unitary "record," and then redacted non-exempt information from within those records, thereby violating the requirements of FOIA and the mandate of *AILA*. No bright line rules in the OIP Guidance compelled DOJ's disputed action. Moreover, DOJ does not claim that the OIP Guidance has the force of law, and we do not regard it as legally binding. Our

resolution of Appellant's claim in this case, therefore, rests solely on the particular facts of this case, the requirements of FOIA, and the law of the circuit as it applies to the situation presented. Appellant nevertheless urges us to go further and "conclusive[ly]" "provide a workable interpretation of [FOIA's] statutory term 'record' to ensure consistent application across the Executive Branch." Br. of Appellant 5, 54. We decline the invitation to unnecessarily opine on an issue with such "far-reaching" implications. *See id.* at 5; *Texas*, 523 U.S. at 300-301.

Finally, no legally cognizable "hardship" will come from this disposition. Appellant "is not required to engage in, or to refrain from, any conduct." *Texas*, 523 U.S. at 301. "The only hardship [Appellant] will endure as a result of delaying consideration of this issue is the burden of having to file another suit. This is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form." *Webb v. HHS*, 696 F.2d 101, 107 (D.C. Cir. 1982) (footnote omitted); *see also Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003) ("The need to bring fresh litigation is not a reason for finding an issue ripe." (citation omitted)).

### III. CONCLUSION

We reverse the judgment of the District Court and order DOJ to release the QFR documents at issue in full, subject only to any applicable statutory exemptions. We dismiss the challenge to the OIP Guidance as unripe.

Rao, *Circuit Judge*, concurring: Agencies, as well as courts, have struggled with how to define a "record" for the purposes of a Freedom of Information Act ("FOIA") request. I write separately to explain that this difficulty arises in part from the fact that courts permit requesters to ask for general categories of *information*, but agencies must release *records*. As perhaps a consequence of this practical asymmetry, we have recognized that agencies have wide latitude to define records with reference to the information requested. *See American Immigration Lawyers Ass'n v. Executive Office for Immigration Review* ("*AILA*"), 830 F.3d 667, 678 (D.C. Cir. 2016) ("[A]gencies … define a 'record' when they undertake the process of identifying records that are responsive to a request.").

The text and structure of FOIA create a parallel procedure for the request and release of records. To receive information, a person must make a "*request* for *records*"—not a request for information—and the request must "reasonably describe[] such records." 5 U.S.C. § 552(a)(3)(A) (emphases added). In response to a request, the agency must "make the records promptly available." *Id.* FOIA's mandates refer to requests for records dozens of times, and only twice to requests for information. Within the statute, the term "information" often appears in the context of the withholding of information by an agency. *See, e.g.*, *id.* § 552(a)(8)(A)(i), 552(b), 552(d). Moreover, although FOIA does not provide a definition of "record," the statute emphasizes the distinction between records and information. For example, an agency may withhold "records *or* information compiled for law enforcement purposes," which means an agency may exempt an entire "record" or alternatively only some "information" within a record. *Id.* § 552(b)(7) (emphasis added); *see also AILA*, 830 F.3d at 677 ("In the context of a record containing exempt information, … the focus of the FOIA is information, not documents.") (cleaned up).

FOIA's symmetrical process for the request and release of records applies straightforwardly in some contexts. When a requester seeks a specific document, such as the Smith Memo, she gets that document (or at least its non-exempt portions). With other requests, however, it may be unclear what constitutes the relevant record for the purpose of release. *See* DEP'T OF JUSTICE, OFF. OF INFO. POL'Y GUIDANCE: DEFINING A "RECORD" UNDER THE FOIA (updated Feb. 15, 2017) (explaining that what constitutes a record may be "based on both the subject of the request and the content of the document")*.* This identification problem arises most acutely when the requester describes information on a particular subject matter with no reference to specific documents that might include the information. *See, e.g.*, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 830 (D.C. Cir. 2001) (seeking in part "any documentation of atrocities in Bosnia from 1993 to the present"). When faced with such a request, the agency must determine what "records" should be released.

The problem is illustrated by Cause of Action's argument that if a requester seeks a word and its definition, the entire "dictionary would … be the relevant 'record' for disclosure." Cause of Action Reply Br. 11. This boil-the-ocean approach to FOIA would inundate requesters with irrelevant material and burden agencies with excessive disclosures. To avoid this result, the parallel request-and-release structure of FOIA permits an agency to identify records in part based on the information requested. In other words, FOIA does not allow a requester to go fishing for a file and reel in the file cabinet.

These commonsense principles are consistent with *AILA*, which repeatedly emphasizes that the agency "identifies a record it deems responsive to a FOIA request." 830 F.3d at 677; *id.* at 678 (noting that "an agency *itself* identifies a particular document or collection of material … as a responsive 'record'"); *see also* Panel Op. 10–11. Given the potential

difficulty of responding to a FOIA request for some category of information, rather than a specific document, an agency may identify a record within a reasonable range and consider the information requested in determining how to segment material into records.

With these observations, I concur in the court's opinion.